FILED
2025 Jul-22 PM 02:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

DONALD TURNER,                            )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )    Case No. 4:24-cv-1630-GMB
                                          )
FRANK BISIGNANO, Commissioner             )
of Social Security,                       )
                                          )
        Defendant.                        )

## MEMORANDUM OPINION

On April 6, 2022, Plaintiff Donald Turner filed an application for a period of disability and disability insurance benefits ("DIB") with an alleged disability onset date of October 20, 2020.   Turner's application was denied at the initial administrative level and upon reconsideration.  He then requested a hearing before an Administrative Law Judge ("ALJ").  The ALJ held a telephone hearing on May 2, 2024, and denied Turner's claims on May 24, 2024.  Turner requested a review of the ALJ's decision by the Appeals Council, which declined review on October 11, 2024.  As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration ("Commissioner") as of October 11, 2024.

Turner's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3).  Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States

Magistrate Judge. Doc. 11.  Based on a review of the parties' submissions, the relevant law, and the record as a whole, the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the [Commissioner's] factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not

---

[1] In general, the legal standards are the same whether a claimant seeks DIB or supplemental security income ("SSI").  However, separate parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations found in excerpted court decisions.

warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing is "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 374–75 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Turner bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

4

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than [at] step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

## III. RELEVANT FACTUAL BACKGROUND

Turner was 48 years old on the alleged disability onset date. R. 42, 54, 220. At the hearing, Turner testified that his primary complaints are manic depression, heart disease, diabetes, a liver condition called MASH, and anxiety. R. 43. In his disability report, Turner alleged the following medical conditions: heart attack, diabetes type 2, and depression. R. 224. He completed the 10th grade and has worked as a delivery driver and maintenance manager. R. 225.

At the hearing, Turner's testimony focused mainly on his physical limitations. R. 43–48. He testified that his physical limitations contribute to his depression and anxiety. R. 43–44. Turner lives with his mother, and she does most of the household chores. R. 45–46. Turner drives to the grocery store and takes his mother on errands. R. 46.

Turner saw Cynthia A. Neville, PhD., a licensed clinical psychologist, for a mental status evaluation on May 30, 2023. R. 372–77. Turner reported a history of depression and anxiety during the evaluation, including a remote history of suicide attempts and thoughts, but no current suicidal ideations. R. 373 & 375. Dr. Neville estimated his intellectual level to be in the low average range and noted that Turner was mildly compromised during her evaluation. R. 376. His euthymic mood and affect appeared stable throughout the evaluation. R. 375. With regard to Turner's thought processes, Dr. Neville noted no loose associations, tangential thinking, or confusion, and no signs of psychosis. R. 375.

Turner reported to Dr. Neville that he is able to take care of his daily needs like bathing, dressing, and grooming, "but it's exerting." R. 376. He stated that he cleans house, drives, prepares meals for himself and his mother, shops for groceries, and does laundry. R. 376. He estimated that he visits with his friends about once a month but talks or texts with them once or twice a week. R. 376. Turner appeared well-groomed and appropriately dressed at the evaluation, and he arrived alone and about 20 minutes early. R. 374–75.

Dr. Neville's diagnosis included generalized anxiety disorder; persistent depressive disorder, early onset with intermittent major depressive episodes, without current episode, moderate; opioid use disorder on maintenance therapy; and tobacco use disorder, mild. R. 376. Although "Turner indicated that he feels anxious with

excessive worrying and increased fearfulness, . . . he did not disclose symptoms that would meet the diagnostic criteria to support the diagnosis of Panic Disorder or Social Anxiety disorder." R. 375.  He also did not meet the criteria to support an ADHD diagnosis. R. 375.  Dr. Neville opined that Turner "appeared to possess the cognitive abilities to understand and remember work instructions" but that his "ability to follow through with work instructions as well as his ability to handle typical work pressures would be negatively impacted by his symptoms of anxiety and depression to a moderate degree currently." R. 376–77.  She further stated that "[h]is ability to interact appropriately with coworkers and supervisors did not seem to be impaired significantly at this time." R. 377.

Turner completed two Daily Function Reports—one in March 2023 and the other in September 2023—and his mother completed one in March 2023. R. 230–37, 246–53, 275–82.  In March 2023, Turner stated that he was "so depressed" that he could not get out of bed and feared other people. R. 246.  As for daily activities, Turner said that he watches television and helps his mother by preparing her food, helping her get dressed, and taking her to doctors' appointments. R. 247.  He reported that he is able take care of his daily needs although it may take longer than it once took. R. 247.  He cooks light meals, does laundry, checks the mail, and does the grocery shopping. R. 247–49.  He handles all of his finances. R. 249.  Turner reported similar activities in September 2023. R. 276–79.

Turner's mother's report reiterated much of what Turner reported in March but focused more on his physical limitations. R. 230–37.  She reported that he takes care of his daily needs and prepares small meals. R. 230–32.  He does laundry, takes out the trash, and drives her to the store. R. 231–33.  She reported that he had "no motivation" to go out even though he "used to be outgoing," but that he talks to his friends on the phone. R. 233, 235.

The ALJ issued a decision on May 24, 2024. R. 31.  Under step one of the five-step evaluation, she found that Turner had not engaged in substantial gainful activity since October 20, 2020, the alleged onset date. R. 20.  At step two, the ALJ concluded that Turner suffers from the severe impairments of peripheral neuropathy, general anxiety disorder, major depressive disorder, diabetes mellitus, hypertension, and obesity. R. 20.  The ALJ noted that these medically determinable impairments cause significant limitations in Turner's ability to perform basic work activities. R. 21.  The ALJ determined that Turner's impairments of substance use disorder or opioid disorder, sleep apnea, polycythemia, non-alcoholic steatohepatitis, and heart attack are not severe.[2] R. 21–22.  At step three, the ALJ found that Turner does not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in the applicable regulations. R. 22–25.

Before proceeding to the fourth step, the ALJ determined that Turner had the

---

[2] Turner does not challenge these findings.

residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b). R. 25. More specifically, the ALJ found that Turner has the following limitations with respect to light work:

> [H]e can frequently climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch and crawl; avoid concentrated exposure to extreme heat and cold; avoid any exposure to hazards; he can understand, remember and carry out simple instructions; he can maintain attention [for] at least two-hour periods and changes in the workplace should occur no more than occasionally.

R. 25. Turner challenges portions of the ALJ's RFC determination. Doc. 15 at 10–15. At the fourth step, the ALJ determined that Turner is unable to perform any past relevant work. R. 30. At the fifth step, the ALJ considered Turner's age, education, work experience, and RFC in determining that there are jobs that exist in significant numbers in the national economy that Turner can perform, including work as a marker, cleaner/housekeeping, and routing clerk. R. 30–31. Therefore, the ALJ concluded that Turner was not under a disability as defined by the Social Security Act from October 20, 2020 through the date of decision. R. 31. Based on these findings, the ALJ denied Turner's application. R. 31.

## IV. DISCUSSION

Turner makes one argument in favor of remand: the RFC formulation was not supported by substantial evidence because the ALJ did not properly develop the record on his mental limitations. Doc. 15 at 10–15. More specifically, Turner contends the ALJ's "reliance on Dr. Neville's opinion is erroneous because not only

is her statement vague, but it is also not considered a legitimate medical opinion under the regulations." Doc. 15 at 12. He argues that the ALJ could have requested a medical statement from a treating source, ordered a consultative examination, or had a medical expert provide "some form of guidance regarding what [Turner] is still capable of doing despite his impairments." Doc. 15 at 14. The court disagrees.

The ALJ's RFC assessment must consider all of the relevant evidence to determine the most work a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). Both the ALJ and the claimant have certain obligations in developing a sufficient record. The claimant is generally responsible for providing evidence for the ALJ to consider when making the RFC finding. 20 C.F.R. § 404.1545(a)(3). The ALJ has a "basic duty to develop a full and fair record," *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003), and it is her responsibility to assess the claimant's RFC at the administrative hearing. 20 C.F.R. § 404.1546(c). This responsibility includes arranging consultative examinations, but only as necessary. *Id*. A consultative examination should be ordered if one is needed to make an informed decision. *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984). However, if no physician recommends an additional consultation and the record is sufficiently developed for the ALJ to make a determination, then the failure to order a consultative examination is not error. *Good v. Astrue*, 240 F. App'x 399, 404 (11th Cir. 2007); *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (stating

that a consultative examination is required only when "necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources").

Here, the record contained sufficient evidence for the ALJ to make an informed decision on Turner's RFC, including the mental capacity limitations. The ALJ found that Turner could "understand, remember, and carry out simple instructions; he can maintain attention [for] at least two-hour periods and changes in the workplace should occur no more than occasionally." R. 25. Substantial evidence supports this portion of the RFC not only in the form of Dr. Neville's opinion, but also because of the Daily Function reports that Turner and his mother completed, reports from other medical providers, and hearing testimony. R. 23–24, 26–28. The ALJ thoroughly discussed the opinion and other evidence supporting Dr. Neville's conclusions. And although Turner argues that Dr. Neville's opinion is "vague," he does not identify any "evidentiary gaps in the record which result in unfairness or clear prejudice" that warrant remand. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995).

Ultimately, the burden of proving disability rests with Turner. *See* 20 C.F.R. § 404.1512; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). "Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports h[is] position; []he must show the absence of

11

substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017); *accord Preston v. Comm'r Soc. Sec. Admin.*, 748 F. App'x 268, 271 (11th Cir. 2018) (noting "that some evidence supports a disability determination does not cast doubt on the propriety of the ALJ's decision"). And even if the court disagrees with the ALJ's resolution of the factual issues or would resolve those disputed factual issues differently, the ALJ's decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *See Baker o/b/o Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989). "If the Commissioner's decision is supported by substantial evidence, this [c]ourt must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The court "will not decide facts anew, make credibility determinations, or reweigh the evidence." *Porto v. Acting Comm'r of Soc. Sec.*, 851 F. App'x 142, 145 (11th Cir. 2021) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)); *see Thomason v. Soc. Sec. Admin., Comm'r*, 2021 WL 4061423, *7 (N.D. Ala. Sept. 7, 2021) (holding that "so long as the finding of the ALJ is supported by substantial evidence, it must be affirmed by this Court"). Under this standard, the court finds that substantial evidence supports the ALJ's findings as to Turner's RFC.

## V. CONCLUSION

For these reasons, substantial evidence supports the Commissioner's decision,

and it is based on the proper legal standards.  Accordingly, the decision of the Commissioner is due to be affirmed.  A final judgment will be entered separately.

DONE and ORDERED on July 22, 2025.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE